UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

    Plaintiff,

v.                                                  Criminal Case No. 13-20894

D-1 Zia Hassan, et al.,               Honorable Sean F. Cox

    Defendants.
_____/

## OPINION AND ORDER REGARDING AMOUNT OF LOSS

On January 16, 2015, Defendant Zia Hassan ("Defendant" or "Hassan") pleaded guilty to Conspiracy to Commit Health Care Fraud. There is no Rule 11 Plea Agreement.

According to the Presentence Report ("PSR"), the United States Department of Health and Human Services (Medicare) is the victim in this case. (PSR at ¶ 21). The Government believes that Defendant is responsible for loss to Medicare in the amount of $5,600,982.69. (Gvmt. Loss Brief, Doc. #168 at 2). Defendant counters that he is only responsible for between $500,000 and $700,000 in losses.

The Court held an evidentiary Loss Hearing as to Defendant on July 20, 2015. For the reasons set forth below, the Court finds that the proper amount of loss attributable to Defendant Hassan is $4,011,003.23.

## BACKGROUND

Count One of the First Superceding Indictment charges Defendant Hassan, along with co-Defendants Nathan Miller and Wilfred Griffith, with Conspiracy to Commit Health Care Fraud in violation of 18 U.S.C. § 1349. Count Two charges Defendants with Conspiracy to Pay and Receive

Kickbacks in violation of 18 U.S.C. § 371.[1] (First Superceding Indictment, Doc. #39).

The First Superceding Indictment alleges that from November 2009 until the present, Hassan submitted false and fraudulent claims to Medicare; offered kickbacks and bribes to Medicare beneficiaries in exchange for use of their beneficiary numbers; paid physicians and others to order physical therapy and other services that were medically unnecessary and were never provided, and fabricated and falsified medical documents to make it appear that physical therapy services had been provided. (First Superceding Indictment, Doc. #39).

On January 16, 2015, just a couple of days before the scheduled trial, Defendant Hassan pleaded guilty to Count One of the First Superceding Indictment. There is no Rule 11 Plea Agreement. At the plea hearing, as required by Criminal Rule 11, the Court endeavored to satisfy itself that there was a factual basis for Defendant's guilty plea:

> The Court: Mr. Hassan, what is it that you did which makes you believe you're guilty under Count One of the first superceding indictment, the charge of health care fraud conspiracy?
>
> Defendant Hassan: I billed Medicare for home health visits between January 15, 2010 and January 26, 2010. While I was out of country. I backdated the forms when it came back. I knew this was illegal and that I was not eligible for payment. I did it to induce payment by Medicare for claims which were false. Others worked with me to create these billings.

---

[1] Co-Defendant Wilfred Griffith was convicted of both counts after a jury trial. Co-Defendant Nathan Miller pleaded guilty to Count One - Conspiracy to Commit Health Care Fraud. (Miller Rule 11, Doc. #58). The factual basis for Miller's plea states that he worked as a patient recruiter for Cherish. Hassan and others paid Miller approximately $250 for each new patient referral. Miller paid Medicare patients $50 for signing up for home health care services. Miller knew that Hassan would have co-conspirator physicians write narcotics prescriptions for Medicare patients that Miller recruited. Miller also knew that Cherish would send individuals to Medicare patients' homes to have them pre-sign physical therapy notes for purported home health care services. (Miller Rule 11, Doc. #58 at 3).

2

(Plea Hearing Trans., Rough Copy, at 14). The parties agreed that this was a sufficient factual basis to support a guilty plea to Conspiracy to Commit Health Care Fraud. (*Id.* at 14–15).

The Government then made an offer of proof as to what it would have proved if Hassan had proceeded to trial:

> Mr. Hurford:   . . . In the end of 2009, the government would prove that Mr. Hassan purchased home healthcare company by the name of Cherish. He operated that company as its owner until this case was charged in 2013. During that period of time, Your Honor, the defendant hired other people to create physical therapy revisit notes and other forms to make it appear as though Cherish was providing legitimate home healthcare services. They were not. Those notes, evidence, physical therapy services that were never provided.
>
> In addition, the government would prove at trial if we were to proceed today, that the defendant paid physicians to certified [sic] that patients were homebound meeting the requirements for reimbursement from the Medicare program when, in fact, they weren't. The defendant also paid recruiters to go out and find Medicare beneficiaries walking around the community and bring them in so that he could bill Medicare for services that were never provided. One of those defendants, Your Honor, was Defendant [Wilfred] Griffith.

(Plea Hearing Trans. at 16–17). The Government stated that it would seek to dismiss Count Two of the First Superceding Indictment as part of the plea deal.

Based on the Offense Conduct contained in the PSR, which largely tracks the allegations made in the First Superceding Indictment, the Probation Department concludes that Hassan is responsible for $5,965,704.36 of loss to the U.S. Dept. of Health and Human Services. (PSR at ¶ 21). An amount of loss greater than $2,500,000.00 but less than $7,000,000.00 adds an additional 18 levels to Defendant's base offense level. *See* U.S.S.G. § 2B1.1(b)(1)(J).

Defendant has lodged numerous objections to the PSR, but his chief argument is that he is not responsible for the amount of loss the Government claims. Defendant argues that he is only

3

responsible for losses stemming from the conduct he specifically admitted to at the plea hearing—to wit, "the fifty-four (54) visits that were billed for on dates while Zia Hassan was out of the country." (PSR at Addendum p. 10).  Based on those fifty-four visits, Defendant estimates that he is responsible for between $500,000 and $700,000 in losses.  (Def. Br. at 2).  A loss amount of more than $400,000 but less than $1,000,000 would add 14 levels to Defendant's base offense level. U.S.S.G. § 2B1.1(b)(1)(H).

As calculated in the PSR, with a Total Offense Level of 32 and Criminal History Category of I, Defendant Hassan's advisory sentencing guidelines range is 121-151 months.  However, the maximum term of imprisonment under 18 U.S.C. §§ 1349 and 1347 is 10 years, or 120 months.

**Evidentiary Hearing**

With the issue so framed by the parties, this Court held an evidentiary hearing on July 20, 2015.  As its sole witness, the Government presented Special Agent Abhijit Dixit from the U.S. Department of Health and Human Services, Office of the Inspector General.  The Government introduced two exhibits into evidence: 1) Government Exhibit 200, which is a summary of claims submitted to Medicare by Advance Home Health Care between February 2009 and May 2010; and 2) Government Exhibit 201, which is a summary of claims submitted to Medicare by Cherish for patients referred by Drs. Walayat Khan, Reza Mafee, and Daphine Brown.

The Government also presented Government Exhibits 155A and 155B, which were previously admitted into evidence during the trial of co-Defendant Wilfred Griffith.  Exhibit 155A is a summary of all claims submitted by Cherish to Medicare from January 2010 to December 2013. Exhibit 155B is a summary of claims submitted by Cherish to Medicare for patients referred under the names Dr. Dwight Smith and Dr. Ruben Benito.

The Government attached numerous exhibits to its brief, including Exhibit 11 - Sharif Ibrahim Interview Memorandum; Exhibit 12 - Syed Masood Shah Interview Memorandum; Exhibit 13 - List of Patient Notes and Visits Created By Syed Masood Shah; Exhibit 14 - Invoice Created by Syed Masood Shah; Exhibit 15 - Dr. Walayat Khan Interview Memorandum; Exhibit 17 - Mohammad Zubair Khan Interview Memorandum; Exhibit 18 - Dr. Reza Mafee Interview Memorandum.  (Gvmt. Loss Brief, Doc. #168).

Defendant Zia Hassan was the sole defense witness to testify at the evidentiary hearing. Defendant also attached several exhibits to his brief regarding the loss amount: Exhibit 1 - Interview of Fe Jones; Exhibit 2 - Statement of Tracy Shellie; Exhibit 3 - Statement of Lydia William; Exhibit 4 - Statement of Aritha Powell; Exhibit 5 - Statement of Dr. Camille Jones-Johnson; Exhibit 6 - Statement of Dr. Rashid Bashir; Exhibit 7 - Statement of Khadim Hussain; Exhibit 8 - Statement of Chitra Gadwani; Exhibit 9 - Statement of Gary Morrison; Exhibit 10 - Report of Interview of Pauline Griffith; Exhibit 11 - Report of Interview of Amer Ehsan; and Exhibit 12 - Copy of NSF check written by Amer Ehsan to Ijaz Ahmed.  (Def. Loss Brief, Doc. #169).

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Having observed the evidence and the witnesses who testified at the evidentiary hearing, allowing for this Court to assess credibility, having considered the arguments presented by counsel, and having applied the governing legal principles, the Court makes the following findings of fact and conclusions of law.[2]

From February 2009 through May 2010, Zia Hassan and Amer Ehsan ("Ehsan") were co-

---

[2] To the extent that a finding of fact is more properly a conclusion of law, and the to the extent that a conclusion of law is more properly a finding of fact, it should be so construed.

owners of Advance Home Health Care ("Advance"). As owners of Advance, Hassan and Ehsan billed Medicare for services that either were not provided or were not medically necessary. Hassan and Ehsan fabricated records to make it appear as though services were actually provided when in fact they were not. Hassan paid physicians, including Dr. Walayat Khan, for patient referrals.

In November 2009, Hassan and Ehsan purchased Cherish Home Healthcare. In May of 2010, Hassan became the sole owner of Cherish. As the owner of Cherish, Hassan paid physicians, including Dr. Walayat Khan, Dr. Reza Mafee, and Dr. Daphine Brown, for patient referrals. Hassan paid recruiters and marketers, including co-Defendant Wilfred Griffith, to find Medicare patients whose beneficiary information could be used to bill Medicare. Co-Defendant Wilfred Griffith used the names of Dr. Dwight Smith and Dr. Ruben Benito to refer patients to Cherish for home health care services. Hassan paid co-Defendant Griffith for those patient referrals.

## ANALYSIS

The amount of loss provision of U.S.S.G. § 2B1.1 applies in cases involving financial crimes, like theft, embezzlement, and fraud. A defendant's base offense level may be increased based on the amount of financial loss caused by the defendant's crime. U.S.S.G. § 2B1.1. The total offense level is used, in turn, to determine a defendant's applicable sentencing guidelines range.

The application notes under U.S.S.G. §2B1.1 provide that the district court "'need only make a reasonable estimate of the loss.'" *United States v. Minor*, 488 Fed. App'x 966, 968 (6th Cir. 2012) (quoting U.S.S.G. § 2B1.1, Application Note 3(C)); *see also United States v. Washington*, 715 F.3d 975, 984 (6th Cir. 2013). Under U.S.S.G. § 2B1.1's application notes, loss generally is the greater of actual loss or intended loss. *Id.*

"'Actual loss' is defined as 'the reasonably foreseeable pecuniary harm that resulted from

the offense,' which in turn is defined as 'pecuniary harm that the defendant knew or, under the circumstances, reasonably should have known, was a potential result of the offense.'" *Minor*, 488 Fed. App'x at 969 (citing Application Note 3(A)(i), (iv)).

In determining the base offense level as well as the specific offense characteristics, the Court can and should consider relevant conduct. *U.S. v. Yaroch*, 2008 WL 2129846 at *24 (E.D. Mich. May 19, 2008) (citing *U.S. v. Watts*, 519 U.S. 148 (1997)). "A court has broad discretion in what it considers relevant conduct." *Id.* "The relevant conduct for which a defendant is held accountable must be based on reliable information supported by a preponderance of the evidence." *United States v. Hayslett*, 11 Fed. App'x 460, 462 (6th Cir. 2001) (citing *United States v. Brawner*, 173 F.3d 966, 971 (6th Cir.1999)).

"[R]elevant conduct is not limited to conduct for which the defendant has been convicted." *United States v. Maken,* 510 F. 3d 654, 658 (6th Cir. 2007). Under U.S.S.G. § 1B1.3(a)(1)(A), relevant conduct for sentencing purposes includes "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant." In addition, under U.S.S.G. § 1B1.3(a)(2), relevant conduct includes "'all acts and omissions [committed by the defendant] that were part of the same course of conduct or common scheme or plan as the offense of conviction.'" *Maken*, 510 F.3d at 657.

For purposes of determining the appropriate amount of loss, the Court concludes that Defendant's relevant conduct includes the fraud that he and Ehsan committed at Advance. The Government has established, by a preponderance of the evidence, that the fraudulent scheme which began at Advance was eventually carried over and continued at Cherish. Hassan admitted to Special Agent Dixit that he and Ehsan were co-owners of Advance. Ehsan admitted to Special Agent Dixit,

7

and testified at the trial of Wilfred Griffith, that Ehsan and Hassan conspired to commit health care fraud at Advance. Dr. Walayat Khan admitted to Special Agent Dixit that he was paid by Ehsan to refer patients to Advance.

The Court further finds that Defendant's relevant conduct also includes paying Dr. Walayat Khan, Dr. Reza Mafee, and Dr. Daphine Brown in exchange for their patient referrals to Cherish. The Government has established, by a preponderance of the evidence, that Hassan paid each of these three doctors for patient referrals. Dr. Walayat Khan admitted to Special Agent Dixit that Hassan paid him to refer patients to Cherish. Dr. Reza Mafee made the same admission to Special Agent Dixit, as did Dr. Daphine Brown. Hassan admitted to Special Agent Dixit that he paid Dr. Walayat Khan, Dr. Reza Mafee, and Dr. Daphine Brown for patient referrals. Paying for patient referrals was a necessary part of Hassan's overall fraudulent scheme to bill Medicare for services that were either medically unnecessary or were not provided.

Defendant's relevant conduct also includes paying co-Defendant Griffith for patient referrals to Cherish under the names of Dr. Dwight Smith and Dr. Ruben Benito. The Government has established, by a preponderance of the evidence, that Hassan paid Griffith, an unlicensed physician, to recruit and refer Medicare patients using the names of Drs. Smith and Benito. Griffith admitted to Special Agent Dixit that Hassan paid him for each patient referral. Hassan admitted to Special Agent Dixit that he paid Griffith for patient referrals. As stated above, paying for patient referrals was a necessary part of Hassan's overall fraudulent scheme and course of conduct.

As a result of the fraud committed at Advance by Hassan and Ehsan, Medicare paid Advance $906,672.85. (Gvmt. Ex. 200).

As a result of the patient referrals from Dr. Walayat Khan, Dr. Reza Mafee, and Dr. Daphine

8

Brown to Cherish, Medicare paid Cherish $2,423,407.60. (Gvmt. Ex. 201).

As a result of these patient referrals from Griffith to Cherish, using the names of Dr. Smith and Dr. Benito, Medicare paid Cherish $680,922.78. (Gvmt. Ex. 155B).

Accordingly, the Court finds that the proper amount of loss attributable to Defendant Zia Hassan is $4,011,003.23.

Defendant argues that he should only be held accountable for losses stemming from the conduct he specifically admitted to in the factual basis for his guilty plea. This argument is without merit. The Court is not confined to the factual basis for the guilty plea when determining relevant conduct during the sentencing phase:

> Admission of facts from a guilty plea is limited to elements of the crime charged or those explicitly admitted by the defendant. . . . Of course, limiting the admission of facts from a guilty plea to elements of the crime charged or those explicitly admitted by the defendant does not keep the government from supporting a sentence with related conduct. Instead, with respect to alleged conduct not necessarily admitted, the government is required to follow the normal procedure of proving relevant conduct at sentencing by a preponderance of the evidence.

*U.S. v. Louchart*, 6890 F.3d 635, 637–638 (6th Cir. 2012).

Defendant also appears to take the position that Ehsan is not credible because he and Defendant had a falling out, resulting in litigation that ultimately concluded in Defendant's favor. But even if the Court were to set aside the statement and testimony of Ehsan as unreliable, the Court's determination of relevant conduct and the resulting amount of loss calculation would be amply supported by the statements of Dr. Walayat Khan, Dr. Reza Mafee, Dr. Daphine Brown, Wilfred Griffith, and Defendant himself. Therefore, Defendant's argument regarding Ehsan's credibility does not alter this Court's analysis.

## CONCLUSION AND ORDER

Based on the foregoing, the Court hereby ORDERS that the proper loss amount attributable to Defendant Zia Hassan pursuant to U.S.S.G. § 2B1.1 is **$4,011,003.23.**

**IT IS SO ORDERED.**

S/Sean F. Cox
Sean F. Cox
United States District Judge

Dated: July 22, 2015

I hereby certify that a copy of the foregoing document was served upon counsel of record on July 22, 2015, by electronic and/or ordinary mail.

S/Jennifer McCoy
Case Manager